UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 13-80434-CIV-MARRA

DOMINIQUE MCCLAIN BARTEET,

Plaintiff,

vs.

KURT EISMANN, JOEL P. STEPHENSON,
PALM BEACH COUNTY PLANNING
ZONING & BUILDING DEPARTMENT and
CODE ENFORCEMENT DEPARTMENT,

Defendants.
_____/

**OPINION AND ORDER**[1]

This cause is before the Court upon Defendants' Motion to Dismiss Amended Complaint (DE 27). Plaintiff has filed a response (DE 29). No reply memorandum was filed. The Court has carefully considered the Motion and is otherwise fully advised in the premises.

I. Background

Plaintiff Dominique McClain Barteet ("Plaintiff") has brought a one count Amended Complaint pursuant to 42 U.S.C. § 1983 for a violation of equal protection under the Fourteenth Amendment of the United States Constitution. (Am. Compl., DE 26.) The Amended Complaint is brought against Defendants Kurt Eismann, as the Code Enforcement Director for Palm Beach County's Code Enforcement Division, in his individual and official capacity; Joel Stephenson, as a structural building inspector employed by Palm Beach County's Planning, Zoning and Building Department, in his individual and official capacity; and Richard Gathright, as a deputy building

---

[1] The Court presumes familiarity with its prior Orders.

official employed by Palm Beach County's Planning, Zoning and Building Department, in his official capacity. (Am. Compl. ¶¶ 5-7.) The Amended Complaint makes the following allegations:

Plaintiff bought a home in 2007 in Palm Beach Gardens, Florida, which did not have a pool barrier fence at the time of purchase. (Am. Compl. ¶¶ 9-11.) A side yard fence was built on the northern side of Plaintiff's house that same year. (Am. Compl. ¶ 12.) That fence was not a swimming pool barrier fence, nor did it encompass the swimming pool. (Am. Compl. ¶ 13.) At some point, Plaintiff's northern neighbor started construction on his property that caused damage to Plaintiff's side yard fence. (Am. Compl. ¶¶ 15-17.) On March 17, 2011, Plaintiff contacted the County's Planning, Zoning and Building Department to complain about her neighbor's activities. (Am. Compl. ¶ 19.) This resulted in the County citing Plaintiff for failing to have a pool barrier fence. (Am. Compl. ¶ 20.) Thereafter, Plaintiff installed a six foot high wood fence. (Am. Compl. ¶ 21.) On June 13, 2011, Stephenson ordered Plaintiff to raise the fence "higher than is allowed by law." (Am. Coml. ¶ 46.) Stephenson cited Plaintiff for a violation of Florida Statute § 162.04(2)[2] and fined Plaintiff $500.00 a day. (Am. Compl. ¶¶ 50-51.)

On June 16, 2011, Plaintiff spoke to Eismann on the telephone. Eismann stated he would continue to fine Plaintiff and then used profanity and hung up the telephone. (Am. Compl. ¶¶ 57-60.) As the code enforcement director, there was no automatic review of Eismann's decisions. (Am. Compl. ¶ 66.) Eismann was the final decision maker and also possessed final policy

---

[2] The Amended Complaint cites this statute. However, this statute merely provides the definition of a code inspector as "any authorized agent or employee of the county or municipality whose duty it is to assure code compliance." Florida Statute § 162.04(2).

2

making authority. (Am. Compl. ¶ ¶ 65, 67.)

Next, Plaintiff was ordered to put a four foot gate on her dock and an alarm on a gate that had a self-closing latch. (Am. Compl. ¶ ¶ 70-71.) On June 22 and 23, 2011, Plaintiff was cited by Stephenson for a pool barrier violation, claiming that the seawall was not 48 inches high. (Am. Compl. ¶ 79.) However, the seawall was over 48 inches high. (Am. Compl. ¶ 80.) On June 24, 2011, Gathright walked on Plaintiff's seawall and Plaintiff told him that her northern neighbor was in violation of setbacks. (Am. Compl. ¶ ¶ 84-85.) Nonetheless, he issued a certificate of occupancy to the northern neighbor. (Am. Compl. ¶ 89.) In addition, Stephenson "allowed a setback violation" on the part of Plaintiff's northern neighbor in the same area where Plaintiff's fence violation was observed. (Am. Compl. ¶ ¶ 18, 26.) Stephenson is a "final decision maker." (Am. Compl. ¶ 52.)

Plaintiff's southern neighbor has an outdoor pool and a dock, but does not have a pool barrier or a manmade seawall. (Am. Compl. ¶ ¶ 33-38.) Plaintiff's northern neighbor has a four foot pool barrier fence. (Am. Compl. ¶ 44.) Plaintiff, as well as her southern and northern neighbors, live adjacent to the intracoastal waterway in single-family homes and have outdoor pools. (Am. Compl. ¶ 31-33.)

Defendants move to dismiss on the following bases. With respect to Gathright, Defendants claim Plaintiff untimely added this Defendant. In addition, the Amended Complaint does not claim Gathright is an official policymaker and the factual allegations do not support any finding that he is an official policymaker. With respect to Stephenson, the official capacity claim fails because there is no allegation he is an official policymaker and the factual allegations do not establish, as a matter of law, that he is a final decision maker. Next, with respect to Eismann, the

3

alleged facts do not support the conclusion that he is an official policymaker. Defendants also challenge the equal protection clause claim, contending that the facts do not allege a proper comparator.

### II. Legal Standard

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Supreme Court has held that "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citations omitted).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quotations and citations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Thus, "only a complaint that states a plausible claim for relief survives a motion to dismiss." Id. at 1950. When considering a motion to dismiss, the Court must accept all of the plaintiff's allegations as true in determining whether a plaintiff has stated a claim for which relief could be granted. Hishon v. King & Spalding, 467 U.S. 69, 73 (1984).

III. Discussion

The Court's prior Order (DE 25) addressed several pleading deficiencies in the original complaint and instructed Plaintiff on necessary amendments. The original complaint sought to bring an equal protection claim against both the County as well as Defendants in their individual capacities. With respect to the entities being sued, one area that needed to be clarified was liability against the municipality. Specifically, the Court instructed Plaintiff to provide allegations that the complained-of actions were taken by either an official policy maker or were in execution of an official custom or policy of the County. Additionally, the Court explained that, with respect to the liability of Defendants in their individual capacities (as opposed to the County), Plaintiff must amend the original complaint to include allegations that these individually named Defendants were official decision makers and from where their authority stemmed. Finally, the Court directed Plaintiff to re-plead the equal protection claim.

Turning first to municipal liability, the Amended Complaint alleges that Eismann is a final policymaker. (Am. Compl. ¶ 65.) Defendants, however, claim that the allegations only demonstrate that Eismann implements existing county policy, rather than making official policy. Defendants rely on the following provisions of state law in arguing that Eismann is not a final policy maker:

Florida Statute 162.06 Enforcement Procedure

(1) It shall be the duty of the code inspector to initiate enforcement proceedings of the various codes; however, no member of a board shall have the power to initiate such enforcement proceedings.

(2) Except as provided in subsections (3) and (4), if a violation of the codes is found, the code inspector shall notify the violator and give him or her a reasonable time to correct the violation. Should the violation continue beyond the time specified for correction, the

code inspector shall notify an enforcement board and request a hearing. The code enforcement board, through its clerical staff, shall schedule a hearing, and written notice of such hearing shall be hand delivered or mailed as provided in s. 162.12 to said violator. At the option of the code enforcement board, notice may additionally be served by publication or posting as provided in s. 162.12. If the violation is corrected and then recurs or if the violation is not corrected by the time specified for correction by the code inspector, the case may be presented to the enforcement board even if the violation has been corrected prior to the board hearing, and the notice shall so state.

(3) If a repeat violation is found, the code inspector shall notify the violator but is not required to give the violator a reasonable time to correct the violation. The code inspector, upon notifying the violator of a repeat violation, shall notify an enforcement board and request a hearing. The code enforcement board, through its clerical staff, shall schedule a hearing and shall provide notice pursuant to s. 162.12. The case may be presented to the enforcement board even if the repeat violation has been corrected prior to the board hearing, and the notice shall so state. If the repeat violation has been corrected, the code enforcement board retains the right to schedule a hearing to determine costs and impose the payment of reasonable enforcement fees upon the repeat violator. The repeat violator may choose to waive his or her rights to this hearing and pay said costs as determined by the code enforcement board.

(4) If the code inspector has reason to believe a violation or the condition causing the violation presents a serious threat to the public health, safety, and welfare or if the violation is irreparable or irreversible in nature, the code inspector shall make a reasonable effort to notify the violator and may immediately notify the enforcement board and request a hearing.
 . . . .

Fla. Stat. § 162.06.

Florida Statute 162.07 Conduct of hearing

(1) Upon request of the code inspector, or at such other times as may be necessary, the chair of an enforcement board may call a hearing of an enforcement board; a hearing also may be called by written notice signed by at least three members of a seven-member enforcement board or signed by at least two members of a five-member enforcement board. . .

(4) At the conclusion of the hearing, the enforcement board shall issue findings of fact, based on evidence of record and conclusions of law, and shall issue an order affording the proper relief consistent with powers granted herein. The finding shall be by motion approved by a majority of those members present and voting, except that at least four members of a seven-member enforcement board, or three members of a five-member

enforcement board, must vote in order for the action to be official. . .

Fla. Stat. § 162.07.

<u>Palm Beach County Code, Chapter 14, Article I, Division 6, Sec. 14-14 Violations</u>

(b) Enforcement. The provisions of this code shall be enforced by:

(1) Special magistrate pursuant to the authority granted by F.S. § 162.01 et seq., as may be amended;

(2) The board of county commissioners through its authority to enjoin and restrain any person violating the code;

(3) Palm Beach County through the prosecution of violations in the name of the State of Florida pursuant to the authority granted by F.S. § 125.69,[3] as may be amended. The code enforcement director may pursue these or any other enforcement remedies available to and applicable to the county;

(4) Article 10 of the Palm Beach County Unified Land Development Code; or

(5) Chapter 8.5, the Citation System Ordinance.

Palm Beach Count Code Chapter 14, Article I, Division 6, Sec. 14-14 (2003), http://www.pbcgov.com/pzb/codeenforcement/property_maintenance_code.pdf

Plaintiff does not challenge the applicability of these provisions.[4] Plaintiff also agrees that the issue of whether an official has final authority to establish municipal policy is a question of law for the Court to decide. <u>Jett v. Dallas Indep. Sch. Dist.</u>, 491 U.S. 701, 737 (1989). Although Plaintiff contends that Eismann's decisions were not subject to review and points to allegations that there was no mandatory board proceeding, Plaintiff cannot create a question of

---

[3] This provision permits code inspectors to issue citations. Florida Statute § 125.69.

[4] The parties quibble over the applicable Palm Beach County ordinance, however, both versions relied upon by the parties have the same language. Plaintiff refers to the building code in its Amended Complaint (Am. Compl. ¶ 22) but does not explain how that code would apply to a determination of a final policymaker.

7

fact relative to the question of whether Eismann is a final policy maker simply by making these bald, conclusory allegations, especially where Florida state and Palm Beach County law place final authority with the enforcement board.  Thus, the Court finds, as a matter of law, that Eismann is not a final policymaker.  The Court finds that any amendment on this point would be futile.

Plaintiff also claims that the Amended Complaint sufficiently alleges a custom or policy, which is an alternative method by which to establish municipal liability.  Brown v. City of Fort Lauderdale, 923 F.2d 1474, 1481 (11th Cir. 1991) (Absent a decision by a policymaker, liability against a municipality may be based on custom and requires a plaintiff to establish "a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law.") Plaintiff claims Stephenson's actions "correlate with [Eismann's] threat and intimidation."  (Resp. at 11.) In support, Plaintiff states that she spoke about the harassment she experienced to numerous County employees and that Stephenson cited Plaintiff for having a seawall that was not 48 inches high when the seawall was 48 inches high.  (Resp. at 12.)  Simply put, the Court does not understand what custom or policy these allegations are attempting to allege.  Nonetheless, the Court will permit Plaintiff one more opportunity to amend to establish municipal liability by virtue of a custom or policy. [5]

---

[5] Gathright is only named in his official capacity and Defendants seek dismissal of him as duplicative of the claims brought against Eismann and Stephenson.  The Court rejects this contention, noting that official-capacity claims nominally raised against individual government officials are "routinely litigated to conclusion on the merits as the functional equivalent of a direct suit against the municipality itself."  Patterson v. Walden, No. 13–0109–WS–B, 2013 WL 3153761, at * 3 (S.D. Ala. June 18, 2013).  Thus, all official capacity claims against the three named Defendants may proceed.  Defendants also complain that adding Gathright is untimely

Next, the Court addresses the liability of Defendants sued in their individual capacities. Here, the Amended Complaint simply alleges that Eismann and Stephenson were final decision makers. (Am. Compl. ¶ ¶ 52, 67.)  In her response memorandum, Plaintiff alleges that Eismann is a final decision maker because Palm Beach County Code states "[t]he Code Enforcement Director may pursue these or any other enforcement remedies available to and applicable to Palm Beach County" and "there can be no dispute that the placement of 'or' in the ordinance gave [ ] Eismann a wide range of power as a decision maker to harass and intimidate plaintiff." (Resp. at 14.)  Additionally, Plaintiff contends Stephenson  "acted to fail plaintiff's pool barrier" which resulted in a $500 a day fine without review. [6] (Resp. at 14-15.)  Plaintiff's argument, however, ignores state law that the final decisions regarding code enforcement is made by the code enforcement board.  Fla. Stat. § 162.06.  Where the biased actor cannot make the final decision regarding the allegedly unconstitutional act, the causal link is broken and liability cannot be imposed against the individual.  See Stimpson v. City of Tuscaloosa, 186 F.3d 1328 (11th Cir. 1999).  Finally, Plaintiff's reliance on Quinn v. Monroe County is unavailing because in that case, the county administrator not only had the authority to recommend termination, but also to immediately effectuate it. Quinn v. Monroe County, 330 F.3d 1320, 1328 (11th Cir. 2003). Under

---

because Plaintiff did not seek a two day extension of time.  Plaintiff's Amended Complaint is timely based upon the 20 day time frame given by the Court and the additional three days provided by the Federal Rules of Civil Procedure . See Fed. R. Civ. P. 6(a), (d); Hoewischer v. Cedar Bend Club, Inc., 877 F. Supp. 2d 1212, 1216 (M.D. Fla. June 28, 2012).

[6] Defendants complain that Plaintiff has identified Stephenson as both a structural inspector and has someone who has issued a citation, which is inconsistent because structural inspectors do not issue citations. (Mot. at 5-6.)  Whether or not Stephenson is a structural inspector or code enforcer is something that cannot be resolved based on a motion to dismiss. But it is also entirely unclear how it makes a difference to the Court's analysis here.

Florida law, upon violation, the code enforcer " *shall* notify an enforcement board and request a hearing" and the enforcement board "*shall* issue an order." Florida Statute § § 162.06, 162.07 (emphasis added). Hence, neither Eismann nor Stephenson have ultimate authority or discretion in determining whether there has been a violation of the code. Thus, the equal protection claim brought against Defendants in their individual capacities cannot stand and any amendment would be futile.[7]

The Court will now discuss the "class of one" equal protection claim. The Court's prior Order instructed Plaintiff to identify how her neighbors are similarly situated. The Amended Complaint states that Plaintiff and her southern and northern neighbors live in single-family residences, are adjacent to the intracoastal waterway and have outdoor pools (Am. Compl. ¶¶ 31-33.)

As discussed in the Court's prior Order:

> To prevail on a "class of one" equal protection claim, [p]laintiffs must show they were intentionally treated differently from others who were similarly situated and that there is no rational basis for the difference in treatment. To be similarly situated, the comparators must be prima facie identical in all relevant respects.

Grider v. City of Auburn, Ala., 618 F.3d 1240, 1263-64 (11th Cir. 2010) (internal quotation marks and citations omitted). Plaintiff claims imposing on her a fence height, a 48 inch foot seawall, a gate on a dock and an alarm for a gate are discriminatory because the southern neighbor was not required to comply in this manner. Likewise, unlike her northern neighbor, Plaintiff is complaining that she was required to have a six foot fence. At this stage in the proceeding, the Court finds that Plaintiff has adequately alleged the similarly-situated

---

[7] For this reason, the Court need not address the issue of qualified immunity.

comparators.⁸  Given that the claims against Defendants in their individual capacities have been dismissed, the equal protection claim will now only proceed against the County, assuming that Plaintiff can allege that the County had a custom or policy to violate Plaintiff's constitutional rights.

IV. Conclusion

Accordingly, it is hereby **ORDERED AND ADJUDGED** that Defendants' Motion to Dismiss Amended Complaint (DE 27) is **GRANTED IN PART AND DENIED IN PART**.  The court dismisses with prejudice the equal protection claim brought against Defendants in their individual capacities.  The Court will permit Plaintiff to amend her equal protection claim brought against Defendants in their official capacities to demonstrate municipal liability on the basis of a custom or policy which must be repled.

**DONE AND ORDERED** in Chambers at West Palm Beach, Palm Beach County, Florida, this 23rd day of March, 2014.

_____
KENNETH A. MARRA
United States District Judge

---

⁸ The Court rejects Defendant's reliance on Hawkins v. Eslinger, No. 6:07-cv-1261-Orl-19GJK, 2008 WL 2074409 (M.D. Fla. May 15, 2008).  In that case, the plaintiff "omit[ted] all factual details, alleging only that 'similarly situated complainants and victims of domestic violence in Seminole County' exists." Id. at * 2. Furthermore, while Defendants claim the claim cannot proceed because the Amended Complaint alleges differences between Plaintiff and her neighbors (Am. Compl. ¶¶ 36-38, 44), the significance of these differences are best resolved at summary judgment when a complete record is before the Court.